at all. Argument not to exceed 15 minutes for plaintiff and 15 minutes to be shared by defendants. Mr. Jordan Crew will be arguing first for the appellant and actually Mr. Jeffrey Beamer will be arguing second in place of Daniel Cho. Mr. William Thomas, you may proceed for the appellant. Good morning. Good morning. May it please the court, Neil Thomas from the Chattanooga Bar. Having heard a rather complicated prior appeal, I'm trying to start out with something simple if I can in this case. And I think I try to do that by defining the issue if I could. And it really is a single issue that applies to both defendants in this case. And that is whether or not the pre-adoptive, and I think it's important, the pre-adoptive mother of two teenage girls is protected by a liberty interest under the due process and where two teenage girls were taken from her without due process. Mother had been requested to adopt the girls. She was in the pre-adoptive phase. She had submitted her papers to the agency for the adoption after approximately 18 months in her possession. Without notice... Can I ask you a question? I think this is a very helpful place to start. So thank you for that way. Tell me with this fact pattern, which is not this case, but I'm trying to explore how we decide when you have this liberty interest and when you don't. So as I understand it, you can have situations where someone's in foster care with the state because, say, one parent or both parents are incarcerated, whatever, or maybe they're in rehab. So they're just not in a position to look after their kids, but it has a finite component to it, right? The rehab's going to end in six months or a year or the prison term ends or something. So in those settings, I'm guessing you would agree there's no liberty interest? Correct. But that's true not just at the end of two years. That's true throughout. So you could have a five-year adoption. It's five years. Two and a half years in, or 18 months to make it like this case, you would agree there's no due process the state has to provide if they decide there's a safety issue and we're taking the kids back, right? That's correct, Your Honor, because the Supreme Court, although the case in offer did not dispose of the issue, but the court there did say, well, you've got biological parents still present who also have a due process right. I think the court was, if it did not explicitly say so, intimated that the adoptive parent has to yield to the biological parent. Now, that's not what we have here because the biological parent's rights in this case have been terminated. We do not have any biological parents present. Right, and I would just say it seems to me what happens at that point is, strange as it is, it's the state that has the interest, right? I mean, we kind of want that because we want someone protecting them. But the state has given that interest to, has granted that interest to this adoptive mother in a pre-adoptive state. But isn't the word pre the key word? Yes. It's an audition or whatever you want to say. What makes it pre-adoptive? I can imagine a series of steps. That is, here they prepared some paperwork. And you do have these Tennessee statutes that say you should have a hearing and we want people to adopt. But all that's happened here is they prepared some papers. I mean, I can imagine they'd submitted papers. They'd been reviewed. They'd been submitted to a court. I mean, you have a whole series of steps, all of which we could call pre-adoptive. But isn't your person pretty much at the beginning of that timeline? If I understand the court's question, she was approved at the time she was requested to take these girls for pre-adoption. Not simply that she was preparing papers all along and hopefully we'd get to the pre-adoption. And so that differs from other foster care placements? Yes, Your Honor. Because other foster care placements, as the Supreme Court has said, and the 10th Circuit and the O.L. said, that's a temporary. Well, I'm asking under Tennessee practice or law, did they say, you know, foster care we gave to Mr. Smith? Correct. In what sense? In the sense that the foster care, the ordinary foster care is a temporary arrangement solely for the purpose of, I hate to be blunt this way, housing the children. Alright. This was not a housing situation. This was a situation where this mother had nurtured these children. She'd sent them in private schools. Well, but now that's your facts. Is there a piece of paper that's different in this case than the piece of paper for some foster care placement with somebody else? Yes, and that was admitted in this case by the making of the motion to dismiss. Okay, so that's your first step and you say that's enough to put the pre-adoptive label on it. Not just the label, but enough to create the liberty interest that you want. That together with the length of time, there are a number of factors as the Supreme Court said, but that is one of the key factors. I want to make sure I'm understanding your answer to Judge Boggs' question. The point is there's a piece of paper from the state that gives the label pre-adoptive and that's the first thing that starts to give a liberty interest. Is that the point you're making? I cannot say to the court that there is a piece of paper because we never got to the discovery process. No, your allegations of your complaint. Just tell me what is in there that is consistent with how you just answered Judge Boggs. I just want to understand it. We allege that on July 1st, 18 months prior to the taking, she was approved as a pre-adoptive parent. And it's at that point that there's a liberty interest? At that point, coupled with the length of time that she happens afterwards. I take it your position is probably that calling it the initial pre-adoptive is enough, but if we press you, you would say if that isn't enough, when the child has been there some period, that makes it really pre-adoptive. Is that the Ten Circuits approach? I'm sorry? Is that the Ten Circuits approach? Ten Circuits. Really? Do they say that the minute you get this label, you have a liberty interest? No, they bunched it. They used the collective system facts as based on all of these facts, there is a liberty interest. But they were very clear in their decision to point out that this was a quote, and I'm quoting, pre-adoptive situation. And so here, did the district court take all these factors into account, or just say because you hadn't gotten all the way to adoption, you had no liberty interest? The district court distinguished LOL by saying you hadn't gotten to the adoption and the length of time that these children were with their foster mother in this case differed from the length of time in the LOL Ten Circuit decision. My position is it shouldn't be length of time, it should be quality of time spent with the children. And the quality of time here is definitely So here, assuming you're to quote win, do you want a ruling that under these circumstances you would always win at the beginning of the pre-adoptive or that we set some sort of standard that the district court should look at factually and have a more sophisticated factual analysis than it gave? Since adoption is not final until the adoption is final. I hate to put it that way because that sounds stupid. But the state always reserves the right to come in and question whether the adoption should proceed if something develops. And that's where I say this is where the due process comes in. If you're going to have a pre-adoptive mother and she's going to go through this process, you better give her due process if you take those children away from her. Now the state statute, as I read it, says something like that if a child's been in foster care for 15 months out of 22 and here it was continuous, you're supposed to get some kind of hearing and that never happened here? Preference and a hearing. Well, a hearing was scheduled. The facts of this case are a little strange. But the hearing was scheduled and then the hearing officer dismissed the appeal of the notice of removal because the agency which removed the children, which it was not authorized to do because it did not have the statutory authority to do it, only the state could do that, then closed her home and said there's no, and that's not an appealable issue to the state. So by doing that. That's why the hearing didn't happen. If the hearing had happened and gone against you, then you would. I think if the hearing had happened and gone against me, I wouldn't be here. I really don't. What could a state say? Let's say you prevail in this case and the state says, you know, this is really troubling for us because we really, you know, sometimes we just think we need to come and take the kids. We've just had too much experience with pre-adoptive settings. I mean, could they deal with this issue by simply just making it clear that essentially, you know, at the outset it's as if you are getting the children for no more than five years, the opening question I had. Could they take care of that by just clarifying at the outset, we want you to know this is how it works. The state is technically still the body that has the key, the only interest in these children, and we're not having hearings if we have a report and we decide to do it. You don't have any due process. Could they do that? The reason I'm hesitating is I hadn't even thought about that. What you're saying is, and it goes back to Judge Boggs' question, if the pre-adoptive label attaches, can the state still say, we don't care, we can take these children back at any time. Well, they give you notice at the outset. In other words, in one sense it's very fair. It may not be fair in the sense of your emotional attachment after 18 months, but it's quite fair in terms of the outset because they make it clear to everybody, we really appreciate this, here's how it works, but we want you to know there are no hearings, and if we're concerned, here's what we do. Actually, we're not even concerned. Some beds open up in the facility we have. We're going to take them back because we think we can do a better job, hypothetically. I suppose hypothetically, and I'm hesitant to ask because I haven't even really thought it through, because we do here have an extensive set of regulations where the state has said, if we're going to take them, this is what we'll do. Your question is, if pre-adoption attaches, could the state say, eh, we know you're pre-adoptive, but... I think he's saying that there wouldn't be any label. There would be this statement in advance. I would think that your answer would be that that just knocks out a state-created property interest, liberty interest, and then the question is, will the Constitution alone get you there, whereas your argument is you've got both the Constitution and the state-created interest. Well, I'm not even sure we do have the state-created. I'm arguing we do. That's what I meant. I was giving you that. The Constitution, because Elwell said there was no state process for that. And Rodriguez... So your answer to the question is the state couldn't do it because the Constitution is the thing looming, and it's what creates liberty interest, and having the children in your house is what creates liberty interest. Yes. What do you do with our Renfro decision? Well, Renfro, there were two. Renfro and the other one. One was simply a temporary. One was temporary. I can't remember which was which. I'm thinking of the Judge Keith one. Well, there was the other one was an assertion of a right to adopt. And that did not squarely present what the facts are in this case, that there is no... Sherrod, the other one you were... Yes. There is no constitutional right to adopt. But there is a constitutional right to have a fair hearing in the removal. That's the distinction I make between those two situations. So I just don't think the facts in either of the decisions of this, prior decisions of this court are applicable in here. Okay. You'll get your full rebuttal. Let's hear from the lawyers on the other side. Thank you. Morning. Morning. May it please the Court. Jordan Cruz with the Tennessee Attorney General's Office. I'm here on behalf of the Department of Children's Services and the Department Commissioner. It's my understanding from opposing counsel's statements here in his reply brief that he's focusing more on the due process clause itself and not the state laws to create a liberty interest. I'll focus on that here. What is the source of law that we're using here to determine whether there's a liberty interest for the purposes of a procedural due process claim? I mean, is this like our own moral intuition, kind of a substantive due process inquiry? Or is it more like getting a permit? Like I remember a case where there was a building permit, and that gave rise to a property interest. I mean, is it something analogous to that? I think it's the former, Your Honor. I think we're dealing with just the due process clause itself. Because I think it's pretty clear that the Tennessee law in this circumstance doesn't create any sort of liberty interest in a continued relationship with foster children. But what was the status of the adoption sort of process, I guess? I mean, because why wouldn't it be analogous? I can't remember the name of the case, but I've had cases where somebody gets a building permit. They were going to build a Walmart, I remember, in one case. And then it gets revoked, like, you know, peremptorily. And they say, wait a minute, I had a property interest in the permit being able to proceed with this, and you can't just take it away without process. Why isn't this analogous to that? Once they get this pre-adoptive status, the building's not built yet, they haven't adopted yet, but why isn't it similar to that situation? Well, here, of course, we're dealing with the liberty interest, not property. It's kind of, you know, it sounds weird to consider a child a property interest. But I think the big difference is here, if you try to analogize it to property interest, I mean, the state has full guardianship of these children. They're in DCS's complete custody and control. And, you know, I just don't think you can analyze or analogize to a property interest in a building permit, because this is something that Ms. Michael never had in the first place. What about the permanency hearing statute? That is, as I read that, they place them with the child, the child there, they haven't done anything to take them away. It's been 17 months, that's more than 15 months. They read the statute, you're entitled to a permanency hearing. Not only entitled to, the state's required to give it, the way I read the statute, because the state wants you to be permanent. And then, if they went ahead and have the hearing, as they said, they wouldn't be here, but even though they've had them for more than 15 months and the hearing was scheduled. So doesn't that create some kind of interest? Two responses to that, Your Honor. First, with respect to the statute itself, I believe the statute and also a policy statement in DCS's policy and procedures makes clear that advanced notice and hearing applies unless the child's safety is at risk. And that's what we're operating under here, because the therapist had notified Omni and maybe also DCS that Ms. Michael was providing unlicensed and unauthorized therapy to these children, and the therapist believed that these children were at a great risk to their safety. And so he believed that immediate removal was necessary. So that's the first part of that answer. Isn't it at least a little odd or curious about this sudden occurrence three days after she submits the adoption papers? Or is that just a pure coincidence? I would assume a coincidence. I have no idea from the record in this case. What happens, I want to make sure you're answering Judge Boggs' question, but if you could just do a brief digression to make sure I understand one feature, because the focus was constitutional and not the state law in the briefing, so just help me with the state law. So wasn't there, since they didn't get the hearing, wasn't there state law relief after that? Was there something they could have done, in other words, when they didn't get the hearing? So I think, so what had happened in this case... Or was that never sought? No state law relief was ever truly sought as a matter of state law? Well, there was state law relief in the form of administrative proceedings initiated subsequently. Okay, so didn't get the hearing, right? And didn't get the hearing presumably because of this risk, right? So you don't get the hearing if you have this risk, so I get the point. But don't they have recourse to go to state court at that point? They do after the... Did they go to state court at that point? Not after the administrative proceedings end. Then you file a petition for judicial review under the UAPA in state court, and that's what happened here. Okay, so then what happened? Then there was an appeal to the Tennessee court. I thought they did go to Chancery Court. That's what you said? They did. That's what I'm trying to figure out. Where did Chancery Court say? Chancery Court said this case is moot because I can't return the kids to you anyways. And so that decision was appealed. And that's under state law? Correct. Okay. I'm sorry, when you said I can't return them to you, oh, that's because of the, quote, closure of your status. Although there's this back and forth where one letter says you were in good standing and one said you weren't. Right, so that's one reason. There were a couple others. Omni had said we're not going to return, we're not going to open your foster home again. DCS said we're not going to open you as a DCS foster home either. And then the fact that Ms. Michael never went out and tried to open her foster home through another provider. And so what the court said is, look, I have no option here. I mean, I can't return the kids to you because you don't have a licensed foster home. Okay, and this is because you have this effectively private intermediary that establishes licensing for foster homes? Because you said they conceivably could have gone to another, quote, provider. I called it an intermediary. Is that? That's correct, Your Honor. DCS under state statute will license private providers. So just spin that one out and just help me make sure I'm getting how that's happening at the same time this case is going on. So that case, they lose in Chancery Court and then is there an intermediate court? I don't remember. So I'm going to just kind of go by the timeline here as best as I can recollect. So administrative proceeding ends, the case is dismissed as moot for the reasons I stated earlier. Ms. Michael files a petition for judicial review in state Chancery Court. DCS files a motion to dismiss as moot. Chancery Court agrees, dismisses the case, the petition is moot. Ms. Michael files an appeal to the Tennessee Court of Appeals. That's when I get involved in this case. Tennessee Court of Appeals agrees this case is moot. Ms. Michael then files a petition for review to the Tennessee Supreme Court. The Tennessee Supreme Court denies review. While that was happening, a federal lawsuit had been filed. When in the state sequence does the federal lawsuit file? At what stage? It is roughly. I believe it's either right before or right after the final determination at the agency level. So the commissioners. I believe that's right. So the first federal lawsuit was filed. The case was dismissed without prejudice on abstention grounds to let the state court proceedings run its course. So after the Tennessee Supreme Court denied review, we come back to federal court. You're so lucky I have the views I have of Rooker Feldman. Exactly. No one is pushing that. That's funny. Well, we believe that there's the most straightforward answer in this case. There's no due process liberty interest in this case. Just to kind of sum up what the cases say about liberty interest in the foster care relationship, we've got the two cases that Ms. Michael relies on, which are the Supreme Court Smith decision. In that decision, it's a dicta, but the court suggests that there could possibly be some procedural protections that must be afforded to foster parents. When the child has lived there in the foster home since they were an infant, they've been there for several years, and the foster child doesn't even know their natural parents. Elwell, the 10th Circuit case, is similar in that respect. They said generally there's no liberty interest for them. Those cases also tend to talk about, at least a little bit, about some competing biological relationship. Here there's not only no biological parents. There's no grandma, aunt, et cetera. Is your position that there's no liberty interest until the adoption is actually signed by the judge? Or what happens, the same question I asked your adversary, is that if you go along further, they'd had the hearing. He says he wouldn't have brought it, but suppose they lay lost at the hearing, or suppose the state contests the adoption. Is it your view that there's no interest until the adoption is stamped? Or how do we judge that timeline? No, I don't think so, Your Honor. I think that the adoption, where the foster parents are in the adoption proceeding is significant. How close are they to being able to adopt this child? Like in Elwell, for example, the 10th Circuit said, these people were 10 days away from the final adoption hearing. This kid has also been in their care for almost his entire life. They were entitled to some sort of protections in these unique circumstances. But, of course, that's not the situation here. These are, at least as far as we can tell, these are the only other than the biological parents who have had a significant relationship. A year and a half is fairly significant.  As far as we know from the record, Your Honor, of course, it's been five years now since they were removed from the foster home, so there could be other significant relationships that have – Right, correct. So when you said about 10 days from adoption, here I go back to the question of the sort of curiosity that not only had – they called it pre-adopted, they were sort of preparing, they'd actually submitted these papers, and then three days later they're pulled back. Are those the kind of factors we should look at, at least? In other words, is this a multi-factor test, which I hate, but at some point along the timeline you do get an interest short of actual adoption? Are you okay with that? But just they're not that far along. I believe so, Your Honor. If I can finish the question, Your Honor. Just answer it in terms of whether Renfro says anything on this, but go ahead, yeah. Renfro does not look at any factors at all. Renfro just says, look, we understand there are emotional attachments here in the foster care relationship, but the foster care relationship is a creature of state law, and we're hesitant and we're not going to afford due process procedural protections to foster parents. I don't recall – And I'll answer Judge Boggs' question. I think he's saying, well, aren't you prepared to make some concession that there is this spectrum, and at some point, after whether it's biological, years, an interest springs into being or something? Your Honor, yeah. The state wouldn't dispute that there may be some procedural protections, and maybe it's some sort of sliding – But procedural protections that go beyond what state law already provides. Well, just normal due process – prior notice in a hearing unless there's an emergency circumstance. Basic procedural protections like that, which, you know, if maybe they go beyond what state statute provides. Once you acknowledge that, then the due process hearing is also about whether there's really an emergency. I promise you that's how it works. I mean, you know, it may be there are goofy states out there that just do this randomly and arbitrarily, but I'm going to guess the norm is that there's a report of something, and whether they're relying on enough is often the question. And sometimes people act precipitously after reports like that. But that's the thing I'm struggling with, which – because I think that is how it ends. So I'm – maybe I'm a little confused. I'm making the point – I'm making the point that if you acknowledge that at some point this liberty interest arises because of length of time, biology, something, it's not a get-out-of-jail-free card to say there was a safety issue. That would be precisely the due process hearing. And it precisely undermines the immediacy of – you know, that's the whole point. The state needs to immediately – well, I assumed it was the point – immediately get custody of the kids sometimes. That's what I thought was going on here. You'll never do that scot-free, I promise you. Well, I think that the state law is, you know, agreeable with that, Your Honor. I think the state law already says, you know, foster parents get prior notice and a hearing unless the child's safety is at risk. And I think that that's analogous to what the due process clause requires. Does the state saying that the child's safety at risk, is that the trump card? You don't get to argue about that? Because I will say, you know, from my lay reading, usually these cases are somebody said they beat the child. Somebody said they groped the child. Here you've got one psychiatrist or therapist saying, well, it's a DID, and the other therapist saying it's a PTSD, and you don't get any sense – I don't get any sense of what is the emergency, what is the harm, if somebody, you know, has one kind of talk instead of a different kind of talk. And your position is the state calls it the child's safety and that's the end of it? Well, I don't think it's just that. I mean, if you look at the particular circumstances of this case here, I think there were some significant concerns here for treating children for a serious mental condition that they didn't have. And I think that's what – it's kind of the difference here. I'm sorry, I'm way over my time. No, no, no, that's only because you're answering our questions, which we appreciate. But I think we're ready to hear from the other lawyer on your side. Thank you. Thank you, Your Honor. So you're for Omnivisions, I take it? I am, Your Honor. Okay. Jeff Beamer of the National Bar on behalf of the defendant, Omnivisions. So my client is the contractor for Omnivisions that approved the plaintiff's foster home. And it has been brought into this case on not only the due process, the constitutional claim, but also the state law claim for outrageous conduct. The court has covered very well the issue of whether there was a substantive due process right. Our position is that the district court followed existing Sixth Circuit precedent and reached the correct result. If there is such a right under the law, it's going to rise under state law and not the due process clause, as I understand. The statute and regulations that the plaintiff relies upon does not involve any The state has not at any time ceded the discretion to act in the best interest of the child and terminate that contractual relationship with the foster parent. Answer Judge Boggs' question, which I think is the tricky question. On the one hand, you can say there's really no role for the due process clause to play. There's a state law here. State law was applied. They got all their rights of review. But it does take you back to this, there's a safety exception. And is it, I mean, the state's in charge of whether there's a safety issue. Is that right? That's a non-reviewable point? I mean, if we're looking at the source of the state law, the statute that the plaintiff is traveling under is, I mean, called the foster care, foster parent bill of rights. And the section, or Tennessee code annotated 37.2.415. 37.2 what? I'm sorry, 37-2-415. 415, got it, thank you. So, I mean, subsection 16 of that statute gives the state the absolute right to terminate the foster care placement and will give the foster parent notice and the reasons for that decision. Except if there has to be an emergency referral to Child Protective Services. And also, you know, the other subsection 20 gives priority to foster parent as the first choice for a permanent home. But doesn't create any expectation of permanency. It gives priority, but not any expectation. You said the state can do this, but didn't Omni do the notice of removal? The state not involved initially? Your Honor, I think the state and OmniVision have to be involved in all decisions. I mean, there are, it is a team approach when there is a child involved. Is that what actually happened, though? Is there any, I mean, we have their complaint. I think an OmniVision's employee actually signed the paperwork to remove the child. And there is nothing in the record that says that they got approval from the state? Not at the motion to dismiss it. And if I may discuss some of the previous questions that have been asked. So, if you look to state law, there is not anything where the state has yielded its discretion to act in the best interest of the child and terminate that relationship. As I understand, you do not look to the due process clause as the source here. The Elwell case that the plaintiff is traveling under, I think that is a case of hard facts making bad law. I don't know that there is any other circuit court that has found the liberty interest in the foster care, foster parent relationship to exist from the due process clause. There are some very difficult facts in that case about how old the child was when it was put in the foster home, how long, far down the road they were in the adoptive process. There have been some allegations of abuse of another child in the home that turned out to be unfounded. That was a review of a denial of qualified immunity where the state found that existing Kansas state law did not create that substantive due process right in the foster care relationship. And the court went an extra step, and I read the concurring opinion as saying it was unnecessary to do so, to find that that liberty interest existed under the due process clause, but it was not clearly established. So reverse the district court's denial of qualified immunity. So some of the questions that were asked earlier, where do you draw the line? What is the test under the due process clause? Because the Tenth Circuit didn't give one. We understand that the traditional foster care relationship is not going to create a substantive due process right liberty interest. We don't know where that line is. We just know that the Elwells fell on the protected side of that line. And that's really problematic in terms of where in the spectrum of the adoption process someone is where that liberty interest... Problematic because it's hard to implement? Is that the point you're making? I think so. At what point does this relationship that's one of state law become a liberty interest? At what point does the state lose its control to act in the best interest of a child that's in state custody? It doesn't lose its ability, it just has to support it a bit better. Or at least support it with an opportunity to test it as opposed to it being incontestable. If you take the strong view that these cases say no right period, then it's not just that it can't act. It can't act with anybody looking over their shoulder. Your Honor, I'm just wondering, just looking at these cases, are we really talking about... She had the post removal procedures available to appeal it to the Department of Children's Services. And then once she exhausted those appeals... Well, there wasn't the reason... I mean, when you cut through everything, the reason she lost was that, again, the state had simply closed... The state and Omni had closed these approvals. Right. And that once that was done, you can't contest the rest of it. Well... Isn't that really the way the court ultimately rules? I believe you're correct, Your Honor. But I think the... I know we're getting kind of beyond the record on the motion to dismiss level, but if she had sought approval from another foster care provider and had her home licensed that way, I mean, it's just because one provider closed her home doesn't necessarily foreclose the opportunity to have her home approved by another agency and the state would license. I don't know how much time I have, but I'm... I don't think you have any more questions, so I think we're good. Thanks so much. And we've got some rebuttal here. Mr. Thomas? Very, very briefly, I think the question was asked, what is the provision of the 14th Amendment? Is it a property interest or what? I think the answer to that is found in the offer case at page 841, where you call it, where it's relied on by the court there that the court said there does exist a private realm of family life where the state cannot enter. It's similar to a privacy. You don't mean property. You mean liberty? I mean, no. I mean, the judge asked whether or not this is, what is the interest involved, and here it's not a property interest. No, I get that. I was just wondering, you know, what's the source of law that allows us to determine whether there was a protected liberty interest or not? Is it just our own moral intuition, sort of substantive due process, or is there something actually in the law that is a rule we're applying here? I think the Supreme Court in offer set that out preliminarily in its decision by saying there's two ways to look at it. One, does the state mandate it by its own statutes and regulations and thereby create the liberty interest through that mandate, or is it inherent in, and I think the word inherent was used in the offer case, is it inherent in the Due Process and Equal Protection Clause of the 14th Amendment? I know where that's going. So it's state law or else it's just, you know, in the nature of it. I think you just hit it. All right. Thank you, Your Honor. I want to thank all three of you for your briefs and responding to our questions, which we always appreciate, so thank you. Thank you. The case will be submitted, and the clerk may call the last case.